**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BAKIR AVDAGIC and MIRHA AVDAGIC, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 4:20-cv-01213-AGF |
| REGENCY MANAGEMENT, NOAH PROPERTY, LLC, and MARK STEVENS, | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Regency Management Company,

LLC's ("Regency") Motion to Dismiss (ECF No. 8) and Defendant Noah Property,

LLC's ("Noah") Amended Motion to Dismiss [1] (ECF No. 26) all three counts of

Plaintiffs Bakir Avdagic ("Bakir") and Mirha Avdagic's ("Mirha") Petition (ECF No. 3).

For the reasons set forth below, the Court will grant in part and deny in part both

motions.

## BACKGROUND

Taken as true for the purpose of this motion, Plaintiffs allege the following facts.

---

[1]     In light of Noah's amended motion, the Court will dismiss as moot its original motion to dismiss (ECF No. 4), which was filed in state court before removal.  The Court will not address any arguments raised in the original motion unless they were incorporated by reference in the amended motion.

Beginning on November 29, 2012, and until March 26, 2015, Bakir was employed as the

Food and Beverage Director of the Holiday Inn Airport West ("Holiday Inn"), operated

by Defendants Regency and Noah.  ECF No. 3, Pet. ¶¶ 2-13.  Throughout Bakir's

employment at the Holiday Inn, he was directly supervised by Mark Stevens,[2] the

General Manager.  *Id.*

During Bakir's employment, he observed multiple instances of misconduct and

reported these to Stevens and Naim Ali, Vice President of Regency and an owner of

Noah.  *Id.* ¶ 14.  The reported misconduct included:

a. Stevens and his girlfriend consumed food and drinks without paying, and
   Stevens would at times falsify a reason for not having to pay.

b. Stevens asked Bakir if Bakir could find ways to steal money from Holiday Inn.

c. Coupons for discounts and complimentary food and drink at Holiday Inn's
   restaurant were printed without authorization.  Bakir's efforts to track the
   unauthorized coupons were thwarted by Stevens.

d. Stevens requested Bakir to hire an undocumented immigrant to work in the
   kitchen.  Bakir refused and threatened to report the activity to authorities.
   Bakir then observed other undocumented immigrants and/or underaged
   employees working in Holiday Inn's kitchen, and when confronted, Stevens
   told Bakir that Stevens would allow the hiring of undocumented immigrants or
   underage workers if they had false documentation.

e. On several occasions, including, on or around November 3, 2014, Bakir
   reported to Stevens that all "servers were not being paid minimum wage as
   required by state and federal law" and insisted that Stevens correct the issue.
   *Id.* ¶ 16(e).  Stevens ignored Bakir's reports.

---

[2]     Stevens was initially named as a defendant in this case, but on November 3, 2020,
the Court dismissed Plaintiffs' claims against Stevens without prejudice due to lack of
timely service of process.  ECF No. 19.

On November 14, 2014, Bakir presented documentation of this misconduct to Naim Ali and Mohammad Ali, another owner of Noah.  *Id.* ¶ 18.  Three days later, Bakir received a Performance Notice of unsatisfactory job performance.  *Id.* ¶ 20.  On or about November 21, 2014, Bakir was diagnosed by his doctor with "acute reaction to stress and depression," anxiety, and Post-Traumatic Stress Disorder, and the same day, Bakir took medical leave from work.  *Id.* ¶¶ 24-25.

In December of 2014, while he was still on leave, Bakir again reported the hiring of undocumented immigrants, underage workers, and wage issues to management, and also to the United States Department of Labor ("DOL").  *Id.* ¶¶ 26-27.  The DOL investigated Bakir's complaints and concluded that Regency was "in violation of several state and federal law[s]" and required Defendants to pay "thousands of dollars in back pay."  *Id.* ¶ 28.

On March 14, 2015, Bakir returned from medical leave to work.  *Id.* ¶ 32.  In less than two weeks, Bakir's employment at Holiday Inn was terminated.  *Id.* ¶ 33.  Plaintiffs allege that Bakir's reporting of misconduct resulted in hostile and retaliatory behavior towards him and contributed to the termination of employment.  *Id.* ¶¶ 16-33.  Plaintiffs further allege, upon information and belief, that Defendants terminated and/or disciplined at least two other employees (a chef and sous chef) in retaliation for reporting undocumented immigrants and underage workers working for Defendants.  *Id.* ¶ 34.  Finally, Plaintiffs allege that Defendants' conduct resulted in Bakir's suffering of mental and physical injuries, including "Post Traumatic Stress Disorder, Anxiety, Depression and Ulcerative Colitis."  *Id.* ¶ 37.

Plaintiffs filed suit on September 19, 2019.  Plaintiffs assert the following state-law claims against both Defendants:  Whistleblowing/ Common Law Employment-at-Will Exception, asserted by Bakir (Count I); Intentional Infliction of Emotional Distress, asserted by Bakir (Count II); (3) Loss of Consortium, asserted by Mirha (Count III).[3]

Defendants Regency and Noah seek dismissal of all counts for failure to state a claim.  As to Count I, Defendants contend that Plaintiffs have not "identified a specific, clear mandate of public policy" that was violated by Bakir's termination.  Regarding Count II, Defendants argue that the claim is preempted by workers' compensation exclusivity under Missouri law, that Count II is a duplicative of Count I, and that, in any event, Defendants' conduct was not "extreme and outrageous."  Finally, Defendants move to dismiss Count III because it is "derivative and depends on viability of an underlying claim by Plaintiff Bakir."  *See, e.g.*, ECF No. 27 at 1.

Plaintiffs oppose the motions to dismiss and respond that they have pled sufficient facts to state all three claims.  Regarding Count I, Plaintiffs argue that they have adequately implicated a violation of public policy by pleading that Bakir was terminated for reporting theft, embezzlement, and DOL violations.  Regarding Count II, Plaintiffs assert that they have adequately pled "extreme and outrageous" conduct and that the claim is not preempted because the alleged injury was not work-related and is beyond the scope of Bakir's employment.  Finally, Plaintiffs argue that, based on the viability of the

---

[3]    Defendants properly removed the case to this Court on diversity jurisdiction grounds.  ECF No. 1.

other two claims, Plaintiff Mirha's loss-of-consortium claim in Count III should also survive.

## DISCUSSION

"To survive a 12(b)(6) motion to dismiss, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *McShane Constr. Co. v. Gotham Ins. Co.*, 867 F.3d 923, 927 (8th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  The purpose of a motion to dismiss is to test the legal sufficiency of the complaint.  The factual allegations of a complaint are assumed true and construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002)).  But "[c]ourts are not bound to accept as true a legal conclusion couched as a factual allegation, and factual allegations must be enough to raise a right to relief above the speculative level."  *Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017).

In light of its diversity jurisdiction, this Court looks to the applicable state substantive law for the rules of decision.  28 U.S.C. § 1652.  The parties do not dispute that the substantive law of Missouri governs here.

## Count I - Whistleblowing/Common Law Employment-at-Will Exception

In Missouri, an at-will employee can generally be terminated for any reason or for no reason at all.  *Taylor v. St. Louis Cnty. Bd. of Election Comm'rs*, 625 F.3d 1025, 1027 (8th Cir. 2010) (citing *Sivigliano v. Harrah's N. Kan. City Corp.*, 188 S.W.3d 46, 48 (Mo. Ct. App. 2006)).  However, there is a narrow public policy exception for an employee

- 5 -

who demonstrates he was discharged "for reporting wrongdoing or violations of law to superiors or public authorities," or "whistleblowing." *Fleshner v. Pepose Vision Inst., P.C.*, 304 S.W.3d 81, 92 (Mo. 2010). This exception is "very narrowly drawn." *Margiotta v. Christian Hosp. Ne. Nw.*, 315 S.W.3d 342, 346 (Mo. 2010). It provides a cause of action for wrongful discharge "when an employer has a statutory, regulatory, or constitutional duty to refrain from discharging an employee for a specified reason and the employer breaches that duty." *Osborn v. Prof'l Serv. Indus., Inc.*, 872 F. Supp. 679, 681 (W.D. Mo. 1994) (citing *Luethans v. Washington University*, 838 S.W.2d 117, 120 (Mo. Ct. App. 1992)). "The rationale behind the public policy exception is the vindication or the protection of certain strong policies of the community." *Osborn*, 872 F. Supp. at 681.

The Missouri Supreme Court has clarified the essential elements to state a whistle-blower claim: (1) plaintiff reported to his superior or the proper authorities a violation of well-established and clear mandate of public policy as expressed in the constitution, statutes, regulations promulgated pursuant to statute, or rules created by a governmental body; (2) plaintiff was terminated from his employment; and (3) his report was a contributing factor in the decision to terminate him. *Newsome v. Kansas City, Mo. School Dist.*, 520 S.W.3d 769, 778-80 (Mo. 2017) (disapproving the use of a verdict director instruction derived from Missouri Approved Instruction (Civil) 38.03, which added to the cause of action the fact that plaintiff reasonably believed the reported act violated the law). *See also Fleshner*, 304 S.W.3d at 95; *Margiotta*, 315 S.W.3d at 346-47; *Yerra v. Mercy Clinic Springfield Communities*, 536 S.W.3d 348, 351 (Mo. Ct. App. 2017).

In the current motions, Defendants challenge only whether Plaintiffs have adequately pled the first element and, more specifically, whether Plaintiffs have identified "a specific, clear mandate of public policy that [Bakir's] termination allegedly violated."  ECF Nos. 9 & 27.

"Public policy" is defined by Missouri courts in the context of a wrongful discharge claim as "the principle of law which holds that no one can lawfully do that which tends to be injurious to the public or against the public good."  *Fleshner*, 304 S.W.3d at 91 (quoting *Boyle v. Vista Eyewear, Inc.*, 700 S.W.2d 859, 871 (Mo. Ct. App. 1985)).  "[T]o sustain this type of claim, the 'petition must specify the legal provision violated by the employer, and it must affirmatively appear from the face of the petition that the legal provision in question involves a clear mandate of public policy.'" *Misischia v. St. John's Mercy Med. Ctr.*, 30 S.W.3d 848, 863 (Mo. Ct. App. 2000) (quoting *Adolphsen v. Hallmark Cards, Inc.*, 907 S.W.2d 333, 338–39 (Mo. Ct. App. 1995)), *rev'd on other grounds*, *Ellison v. Fry*, 437 S.W.3d 762 (Mo.  2014).

"The mere citation of a constitutional or statutory provision in a pleading is not by itself sufficient to state a cause of action for retaliatory discharge[;] the plaintiff must demonstrate that the public policy mandated by the cited provision is violated by the discharge."  *Margiotta*, 315 S.W.3d at 347.  However, "a plaintiff need not rely on an employer's *direct* violation of a statute or regulation.  Instead, the public policy must be *reflected by* a constitutional provision, statute, regulation promulgated pursuant to statute, or a rule created by a governmental body."  *Fleshner*, 304 S.W.3d at 96 (emphasis in original).

- 7 -

It is immaterial to a wrongful discharge action whether the violation of law "results in civil fines, injunctions, or disciplinary action against a professional license." *Margiotta*, 315 S.W.3d at 347. Furthermore, "there is no requirement that the violations that the employee reports affect the employee personally, nor that the law violated prohibit or penalize retaliation against those reporting its violation." *Id.* (quoting *Fleshner*, 304 S.W.3d at 97). Instead, the relevant inquiry is "whether the authority clearly prohibits the conduct at issue in the action." *Id.*

Plaintiffs' petition alleges that the following legal provisions were allegedly violated: (1) Missouri's statute criminalizing stealing, Mo. Rev. Stat. § 570.030 (allegedly violated by Stevens' stealing and embezzlement); (2) the federal statute criminalizing the bringing in and harboring of aliens, 8 U.S.C. § 1324 (allegedly violated by Defendants' employment of undocumented immigrants and Steven's statement that he would hire such workers if they provided false documentation), and (3) federal and state minimum-wage laws (allegedly violated by Defendants' failure to pay servers minimum wage). Plaintiffs further allege violation of labor laws by Defendants' employment of underage workers and Steven's statement that he would hire such workers if they provided false documentation, but Plaintiffs do not specify the statutes allegedly violated.

As to Missouri's criminal stealing provision, the Court concludes that Plaintiffs' allegations contain precisely the type of "[v]ague reference to 'theft' and 'misuse' *of the employer's own property*" that Missouri courts and the Eighth Circuit interpreting Missouri law have found "insufficient to state a claim under the 'narrow' public policy exception." *See Frevert v. Ford Motor Co.*, 614 F.3d 466, 471–72 (8th Cir. 2010)

(emphasis in original) (quoting *Link v. K–Mart Corp.*, 689 F. Supp. 982, 983-85 (W.D. Mo. 1988)); *see also Link*, 689 F. Supp. at 985 (holding that where the plaintiff alleged termination as retaliation for having reported the "misuses and thefts of company telephone services" and the "misuse and theft of food merchandise" by several managers, the complaint failed to state a claim because it did "not implicate[] any statute, regulation or constitutional provision" and did not allege that he was disciplined for reporting "violations of a well established and clear public policy that places a positive duty upon [the employer]").  Plaintiffs' citation to the public policy of "encourag[ing] employees to come forward and report criminal activity by coemployees," ECF No. 14 at 4, is at best a generally applicable public policy, and not the "public policy mandated by the cited provision."  *Margiotta*, 315 S.W.3d at 347.  Therefore, the Court will dismiss Count I to the extent it is based on Bakir's reporting of stealing.

However, at this stage, the Court will permit the remainder of Count I to proceed. Defendants do not dispute that the federal immigration laws or federal and state employment laws imposing minimum wage and age requirements involve mandates of public policy under Missouri law.  Rather, Defendants assert that Plaintiffs have not clearly defined the statute or regulation allegedly violated.

"Generally, Missouri courts have reasoned that rules do not have a 'clear mandate of public policy' if they do not provide notice of explicit legal obligations."  *Niemeier v. Assured Partners of Mo., LLC*, No. 4:17CV2560 DDN, 2019 WL 1254744 at *8 (E.D. Mo. Mar. 19, 2019) (quoting *Margiotta*, 315 S.W.3d at 346)).  As such, a wrongful discharge claim fails "absent a sufficiently definite statute, regulation based on statute,

constitutional provision, or rule promulgated by a government body that clearly gives notice to the parties of its requirements." *Margiotta*, 315 S.W.3d at 346

But Plaintiffs' complaint gives Defendants fair notice of the labor laws allegedly violated, even if it lacks precise statutory or regulatory citations.  For example, although Plaintiffs cite in their complaint to 8 U.S.C. § 1324, which criminalizes the bringing in and harboring of certain aliens, they refer in their opposition brief to the likely more-applicable 8 U.S.C. § 1324a, which makes it a crime to "to hire, or to recruit or refer for a fee" undocumented immigrants.  *Compare* ECF No. 3 at 5, *with* ECF No. 28 at 7.  Likewise, although Plaintiffs' complaint does not explicitly cite the federal or state employment statutes or regulations imposing minimum wage or age requirements, the complaint does expressly reference reports of servers "not being paid minimum wage as required by state and federal law," ECF No. 3 ¶ 16(e).

Taking Plaintiffs' allegations as true, Defendants can hardly claim a lack of notice of the explicit legal obligations arising from the labor laws at issue here, particularly when they are alleged to have defended a DOL investigation and been required to pay back pay as a result of violating those labor laws.

Indeed, the Missouri Supreme Court in its seminal case on this type of wrongful termination claim held that the state's minimum wage laws, Missouri Revised Statutes sections 290.500 to 290.530, reflect the public policy that "employees should be encouraged to communicate with government labor investigators about their employers' overtime compensation without fear of retaliation." *Fleshner*, 304 S.W.3d at 97.  The plaintiff's claim in that case, as here, was premised on the plaintiff's reports to federal

labor investigations regarding overtime violations. *Id.* at 86. The court held that the plaintiff's reports fell within the ambit of the public policy expressed in the state's minimum wage laws. *Id.* at 96. So do Bakir's reports here. Therefore, the Court will permit Bakir's claim in Count I to proceed to the extent it is based on his reporting of labor law violations.

## Count II - Intentional Infliction of Emotional Distress

Defendants move to dismiss Count II on the following grounds: (1) it is preempted by workers' compensation exclusivity, (2) it is duplicative of Count I, and (3) the alleged conduct was not "extreme and outrageous." Because the Court agrees that Count II is preempted by the Missouri Workers' Compensation Act, it need not reach Defendants' other arguments.

The Missouri Workers' Compensation Act states that "[t]he rights and remedies herein granted to an employee shall exclude all other rights and remedies of the employee, the employee's spouse, parents, personal representatives, dependents, heirs or next kin, at common law or otherwise, on account of such injury or death by accident or occupational disease." Mo. Rev. Stat. § 287.120. It is well established that the Workers' Compensation Act supplants all other common-law rights of an employee if the Act applies. *State ex rel. McDonnell Douglas v. Ryan*, 745 S.W.2d 152, 153 (Mo. 1988). As a result, the Act provides "the exclusive remedy for injuries arising out of and in the course of employment," *Palermo v. Tension Envelope Corp.*, 959 S.W.2d 825, 829 (Mo. Ct. App. 1997).

This workers' compensation exclusivity covers emotional injuries. "The law is that Missouri's Workers' Compensation law provides the exclusive remedy for emotional distress inflicted during the course of employment." *Waldermeyer v. ITT Consumer Fin. Corp.*, 767 F. Supp. 989, 993–94 (E.D. Mo .1991); *see also Nichols v. American Nat'l Ins. Co.*, 945 F. Supp. 1242, 1248 (E.D. Mo. 1996) (dismissing the plaintiff's claim of intentional infliction of emotional distress; "[b]ecause these acts and the emotional injuries flowing from them necessarily occurred during the course of Plaintiff's employment, the Court holds that Missouri's Workers' Compensation Law provides the exclusive remedy for the emotional distress inflicted.").

However, the Act does not apply to claims alleging emotional distress arising after employment is ended or to claims under the Missouri Human Rights Act that merely allege emotional distress as a component of damages. *See, e.g.*, *Kientzy v. McDonnell Douglas Corp.*, 990 F.2d 1051, 1060-61 (8th Cir. 1993) (holding that where a plaintiff's "unemployment, as a result of a discriminatory discharge" caused the distress, the workers' compensation laws did not apply); *Drake v. U.S. Road & Rail, Inc.*, 1992 WL 63392, at *1 (E.D. Mo. 1992) (holding that where "the fact that [the plaintiff] is *not* employed" gave rise to emotional injuries, the injuries were "not within the realm of coverage contemplated by the Missouri Workers' Compensation Act.") (emphasis in original); *Sullivan v. Curators of the Univ. of Mo.*, 808 F. Supp. 1420, 1421-24 (E.D. Mo. 1992) (finding that the Missouri Humans Rights Act is not preempted by the Workers' Compensation Act).

The parties do not dispute that Count II is an independent common-law tort claim. Plaintiffs also concede that the Bakir's alleged emotional injuries "arose during the term of his employment" and that his "symptoms of severe distress began prior to termination". ECF No. 9 at 7; ECF No. 14 at 7-8; ECF No. 27 at 7; ECF No. 28 at 8-9. But Plaintiffs attempt to avoid the workers' compensation bar by arguing that Bakir's emotional distress was induced by Defendants' "criminal activity," such as "[p]articipating in schemes for theft, embezzlement, intentional hiring of illegal workers, and intentional wage violations," and thus, "did not arise from anything having to do with a normal course of events one experiences during a job." ECF No. 14 at 8-9; ECF No. 28 at 9-10.

Plaintiffs correctly conclude that "[p]resented by Plaintiff's claim is whether his emotional distress arose out of and in the course of his employment or not, and this is a question of fact." ECF No. 14 at 8; ECF No. 28 at 9 (citing *Hill v. John Chezik Imports*, 797 S.W.2d 528, 531 (Mo. Ct. App. 1990)). However, it is well settled that the Missouri Labor and Industrial Relations Commission ("LIRC") has the exclusive jurisdiction to resolve that factual question. *See, e.g.*, *Thorne v. Welk Investment, Inc.*, 197 F.3d 1205, 1212 (8th Cir. 1999) (citing *Killian v. J & J Installers, Inc.*, 802 S.W.2d 158, 161 (Mo. 1991)); *Goodrum v. Asplundh Tree Expert Co.*, 824 S.W.2d 6, 8 (Mo. 1992). "Missouri courts have consistently held that the [LIRC] has exclusive original jurisdiction to hear any claim in which a threshold question is whether a work-related injury resulted from an accident arising out of and in the course of employment." *Cincinnati Cas. Co. v. GFS Balloons*, 168 S.W.3d 523, 526 (Mo. Ct. App. 2005) (citing *Schopp v. Matlock*, 880

- 13 -

S.W.2d 357, 359 (Mo. Ct. App. 1994)).  In fact, the very case that Plaintiffs rely on, *John Chezik Imports*, held that "[t]he Labor and Industrial Relations Commission has sole jurisdiction" over the issue of whether the tortious conduct arose out of and in the course of employment, and the court thus dismissed the case for lack of jurisdiction.

As noted in *Deckard v. O'Reilly Automotive*, 31 S.W.3d 6, 14 (Mo. App. 2000), another case cited by Plaintiffs, "a judicial court is restrained from adjudicating a question within the jurisdiction of an administrative tribunal until that tribunal has rendered its decision."  Because a determination regarding whether the alleged injuries arose out of and in the course of Bakir's employment has not been made, this Court has no jurisdiction over Bakir's common-law tort claim of intentional infliction of emotional distress.  Therefore, the Court will dismiss Count II without prejudice, for lack of subject matter jurisdiction.

## Count III - Loss of Consortium

Defendants' sole basis for seeking dismissal of Plaintiff Mirha's loss-of-consortium claim in Count III is that it is "derivative and depends on viability of an underlying claim by Plaintiff Bakir."  ECF Nos. 9 & 27.  As discussed above, Bakir's whistleblower claim will survive at least in part.  Thus, the derivative Count III will survive to the same degree.

## CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendants' motions to dismiss are **GRANTED in part and DENIED in part**, as set forth above.   ECF Nos. 8 & 26.

- 14 -

Count I is **DISMISSED in part**, as to Plaintiffs' claim regarding termination in retaliation for reporting of stealing.  Count II is **DISMISSED without prejudice** in entirety, for lack of subject-matter jurisdiction.

 **IT IS FURTHER ORDERED** that Defendant Noah Property, LLC's original motion to dismiss is **DISMISED as moot**.  ECF No. 4.

         _____
         AUDREY G. FLEISSIG
         UNITED STATES DISTRICT JUDGE

Dated this 24th day of March, 2021.